**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL SMITH,** *et al.* | ) | **CASE NO. 4:02CV0980** |
| | ) | |
| Plaintiffs, | ) | **JUDGE PETER C. ECONOMUS** |
| | ) | |
| V. | ) | |
| | ) | |
| **AJAX MAGNETHERMIC** | ) | |
| **CORP.,** *et al.* | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

This matter is before the Court upon Plaintiffs' Revised Unopposed Motion for Class Certification, Preliminary Approval of Settlement, and Approval of Notice Plan. (Dkt. # 100).

**I. BACKGROUND**

Plaintiff Michael Smith filed this class action in 2002, on behalf of a class of approximately fifty-five former employees of Defendant Ajax Magnethermic Corp. ("Ajax") who were employed at the Warren, Ohio, Ajax facility, and who were terminated from employment on or around May 9, 2002. (Dkt. # 1). The Complaint named as Defendants Ajax; Ajax's corporate owner, Citicorp Venture Capital Ltd. ("Citicorp"); and

ten of Ajax's lenders ("Lender Defendants"), all of whom were alleged to have been controlling Ajax at the time relevant to the Complaint. (Dkt. # 1). Plaintiff alleged that each employee in the proposed class had been terminated from employment in violation of the Worker Adjustment and Retraining Notification Act ("WARN"), 29 U.S.C. §§ 2101-2109, and sought recovery of back wages and benefits, and damages due under a theory of promissory estoppel. (Dkt. # 1).

The case was originally assigned to District Judge Dan A. Polster, who recused himself, pursuant to 28 U.S.C. § 455(a)(c)(4), on October 3, 2002. (Dkt. # 46). The case was then reassigned to District Judge John M. Manos. (Dkt. # 46). Judge Manos recused himself on January 7, 2003, pursuant to L.R. 3.1(b), and the case was reassigned to this Court. (Dkt. # 49).

On February 14, 2003, by agreement of the parties, three of the Lender Defendants were dismissed from the litigation. (Dkt. # 51). On March 4, 2003, the Court granted a motion dismissing the seven remaining Lender Defendants, and dismissing the breach of contract claim against the Lender Defendants. (Dkt. # 54). The Court then granted Plaintiffs' Motion for Summary Judgment as to Defendant Ajax on September 23, 2003, in the amount of $131,639.44. (Dkt. # 63). On March 9, 2004, the Court granted Plaintiffs' Motion for Default Judgment against Defendant Citicorp in the same amount. (Dkt. # 74). The judgments against Defendants Ajax and Citicorp are not affected by the proposed settlement agreement. (Dkt. #100).

On interlocutory appeal, the Sixth Circuit reversed in part this Court's March 4,

2

2003, order dismissing the seven remaining Lender Defendants. Smith v. Ajax Magnethermic, 144 Fed.Appx. 482 (6th Cir. 2005). The Court affirmed the dismissal of the breach of contract claim, leaving only the WARN Act claim against the Lender Defendants. Id. Plaintiffs and Lender Defendants then entered extensive settlement negotiations. Plaintiffs assert that the parties have now reached an agreement. The instant motion seeks class certification for purposes of settlement, preliminary approval of the proposed agreement, and approval of the proposed notice plan. (Dkt. # 100).

## II. LAW AND ANALYSIS

Plaintiffs have submitted the instant motion for class certification in the context of, and primarily for the purpose of, finalizing a settlement in this matter. Though this is a perfectly acceptable practice, this Court "must pay undiluted, even heightened, attention to class certification requirements in a settlement context." In re Inter-Op Hip Prosthesis Liability Litigation, 204 F.R.D. 330, 339 (N.D. Ohio 2001) (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998) (internal quotations omitted)).

### A. Class Certification

#### *1. Rule 23(a) Class Certification Requirements*

Before certifying a class action, district courts must conduct a "rigorous analysis" into whether the movant has demonstrated that the action satisfies all of the prerequisites of Federal Rule of Civil Procedure 23(a). General Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982); Stout v. J.D. Byrider, 228 F.3d 709, 716 (6th Cir.2000).

Rule 23(a) provides:

One or more members of a class may sue ... as representative parties on behalf of all only if (1) the class is so numerous that joinder is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).

Thus, as a prerequisite to certification of a class action, Plaintiffs must show that the action satisfies the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a).  See In re Am. Med. Sys., Inc., 75 F.3d 1069, 1079 (6th Cir.1996) ("The party seeking the class certification bears the burden of proof."). A district court has broad discretion in determining whether to certify a class, but it must exercise that discretion within the framework of Rule 23(a). Id.

A district court may not inquire into the merits of the class representative's underlying claims, Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974), and should accept the Complaint's allegations as true.  Nevertheless, a district court cannot certify a class action based on "its designation as such in the pleadings." Am. Med. Sys., 75 F.3d. at 1079.  Rather, the district court may only certify a class where "an adequate statement of the basic facts" demonstrates that each of the Rule 23(a) requirements is met. Id.  In making such a determination, a district court may draw reasonable inferences from the facts before it.  Senter v. Gen. Motors Corp., 532 F.2d 511, 520 (6th Cir.1976).

The numerosity requirement of Rule 23(a)(1) is satisfied in this case.  The Sixth

4

Circuit has noted that "[i]mpracticability of joinder is not determined according to a strict numerical test but upon the circumstances surrounding the case." Id. at 523 n.24. Though the class size in this case is estimated at only fifty-five former Ajax employees, other factors tend to make joinder impracticable. First, the relatively small damages suffered by each class member lessens the possibility of litigation of individual claims. The Supreme Court in Amchem Products, Inc. v. Windsor, 521 U.S. 591, 617 (1997), observed that "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." (Quoting Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997). Class certification in the instant case would overcome that precise problem by compiling fifty-five relatively small potential recoveries into something worth litigating. In addition, while joining fifty-five plaintiffs would not be impossible, the judicial and litigation resources required to do so make such a course impracticable. "[T]here is no reason to encumber the judicial system with [many] consolidated lawsuits when one will do." Basile v. Merrill Lynch, Pierce, Fenner, & Smith, Inc., 105 F.R.D. 506, 508 (S.D. Ohio 1985).

The proposed class in the instant case also satisfies the Rule 23(a) commonality requirement. Rule 23(a)(2) mandates that "questions of law or fact common to the class" exist. FED. R. CIV. P. 23(a)(2). "The commonality test is qualitative rather than quantitative" in that "there need be only a single issue common to all members of the class." Am. Med. Sys., 75 F.3d at 1080. According to the Complaint in the instant case, all of the

5

fifty-five potential class members were employed at the same location, were terminated on or around the same date, and allege the same violation of the WARN Act's sixty-day notice requirement. (Dkt. # 1). Additionally, each potential class member presents a similar claim for relief in the form of back wages and benefits, pursuant to Section 5(a) of the WARN Act. (Dkt. # 1). Thus, common questions of both law and fact exist among the members of the proposed class.

The proposed class also satisfies the Rule 23(a) typicality requirement. Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). The Supreme Court has repeatedly held that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." General Tel., 547 U.S. at 156 (quoting East Texas Motor Freight System v. Rodriguez, 431 U.S. 395, 403 (1977) (internal quotations omitted). Plaintiff Michael Smith, like each of the fifty-four other potential class members, was employed at the Warren, Ohio, Ajax facility and was terminated on or around May 9, 2002, allegedly without the sixty-day notice required under the WARN Act. (Dkt. # 1). He presents a claim for back wages and benefits, similar to each of the potential class members. (Dkt. # 1). Thus, Smith is part of the potential class, possesses the same interests, and suffered the same injury as the other members. His claims, as the representative party, satisfy the typicality requirement of Rule 23(a)(3).

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). The Supreme Court in Amchem

6

noted that "[t]he adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." 521 U.S. at 625. In the instant case, Plaintiff Michael Smith's WARN Act claim is identical to those of the approximately fifty-four other potential class members. (Dkt. # 1). The only variation among class members, including Smith, is in the share of damages that will be awarded to each based upon the actual damages suffered by each employee. (Dkt. # 1). Smith's interests in this litigation and settlement do not appear to conflict at all with those of the class of plaintiffs he seeks to represent. The requirement of Rule 23(a)(4) is, therefore, satisfied in the instant case as to the representative Plaintiff. The named Plaintiff, Michael Smith, can fairly and adequately protect the interests of the class.

The adequate representation requirement of Rule 23(a)(4) also takes account of the competency of class counsel. Rutherford v. City of Cleveland, 137 F.3d 905, 909 (6th Cir. 1998). "The court reviews the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation." Stout, 228 F.3d at 717. Class counsel, Paul W. Flowers and W. Craig Bashein, are able attorneys with experience in the conduct of class action litigation. (Dkt. # 98). Accordingly, the Court is satisfied that counsel can vigorously and competently represent the plaintiff class in this matter.

### 2. *Rule 23(b) Requirements*

In addition to the Rule 23(a) requirements, any proposed class action must also fall into one of three categories permitted under Rule 23(b). International Union, United

7

Automobile, Aerospace, and Agricultural Implement Workers of America v. General Motors Corp., 2007 WL 2239208 at *7 (6th Cir. 2007). Plaintiffs seek certification under Rule 23(b)(3), which permits class action where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." (Dkt. # 100); FED. R. CIV. P. 23(b)(3).

The predominance inquiry tests whether a proposed class is sufficiently cohesive to warrant the adjudication of all claims as a class rather than individually. Amchem, 521 U.S. at 623. "A claim will meet the predominance requirement when there exists generalized evidence that proves or disproves an element on a simultaneous, classwide bases, because such proof obviates the need to re-examine each class member's individual position." Manners v. American General Life Ins. Co., 1999 WL 33581944 (M.D. Tenn 1999) (unreported). Class certification under Rule 23(b)(3) is inappropriate where individualized factors may play a role in the potential for success or failure of the claims of individual class members. Coleman v. General Motors Acceptance Corp., 296 F.3d 443, 446 (6th Cir. 2002) (noting that Rule 23(b) certification was inappropriate where plaintiffs failed to show that increased auto loan finance charges for African Americans were not due to individualized factors).

In the instant case, common questions of law and fact predominate over individual questions. Plaintiffs allege that each class member suffered damages through Defendants' failure to provide the statutorily required sixty-day notice of termination, in violation of the

8

WARN Act. (Dkt. #1).  Certification of the class in the instant case would not suffer from the "individualized factor" problem of Coleman, as the individualized factors surrounding each plaintiff's termination would have little effect on the WARN Act claims.  The overriding question involves the Defendants' obligation under the WARN Act to provide adequate notice of termination, which affects each class member in the same manner.

In addition to finding that common questions of law and fact predominate, Rule 23(b)(3) also requires that a class action be superior to other methods of adjudication.  In determining the superiority of a class action to other litigation options, a court must consider "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action."  FED. R. CIV. P. 23(b)(3).

In the instant case, all of these factors weigh in favor of a class action.  First, the relatively small amount of individual damages and the similarity of claims give class members little interest in individually controlling separate actions.  Second, the Court is unaware of any other litigation concerning these alleged WARN Act violations, nor is such litigation likely given the costs of litigation relative to the potential recovery on individual claims.  Third, concentration of these claims in this Court is desirable, as it will streamline the resolution of the claims and conserve judicial and litigation resources.  Finally, the

9

Court is aware of no particular difficulties associated with the management of this class action, especially given the current stage of the litigation. Thus, for purposes of Rule 23(b)(3), a class action is superior to other methods of adjudication in the instant case.

Having satisfied the requirements of Rule 23(a), and being the type of class action permitted under Rule 23(b)(3), the Court finds that class certification for purposes of settlement is appropriate in the instant case.

### B. Preliminary Approval of Settlement

Plaintiffs also seek preliminary approval of the settlement agreement reached by the parties. (Dkt. # 100). In its preliminary assessment of the fairness of the proposed agreement, the Court must take care not to intrude upon the private settlement negotiations of the parties any more than is necessary to determine that the agreement is not the result of fraud or collusion, and that it is fair and adequate in light of the potential outcome and the costs of litigation. In re Inter-Op, 204 F.R.D. at 250. The Sixth Circuit has held that, in the context of approving class action settlements, the Court "should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs." Williams v. Vukovich, 720 F.2d 909, 922-23 (6th Cir. 1983). Nevertheless, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, it is ultimately the responsibility of the Court to ensure that the proposed settlement is fair and adequate for all involved, and that it does not advance the interests of the named Plaintiff and counsel at the expense of the unnamed class members. Id.

In making a final determination of fairness, a court will consider several factors:

> (1) the strength of plaintiffs' case, both as to liability and damages; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the reaction of the class members to the proposed settlement; (8) the public interest; and (9) the ability of the defendants to withstand a greater judgment.

In re Inter-Op, 204 F.R.D. at 351. At this preliminary approval stage, however, only certain of these factors are relevant to the fairness inquiry.

### *1. The Strength of Plaintiffs' Case*

First, Plaintiffs concede that their case against the Lender Defendants is not a sure success. In particular, "[e]stablishing that the Lender Defendants could...be held responsible for Ajax's violation of the WARN Act is...problematic for Plaintiffs." (Dkt. # 100 at 6-7). Thus, a settlement that provides each Plaintiff with a substantial economic sum, as the proposed agreement does, may represent Plaintiffs' best opportunity for recovery of damages on their claims.

### *2. The Risk, Expense, Complexity, and Likely Duration of Litigation*

The instant case has already been litigated in this Court for over five years, with substantial legal fees having no doubt been accrued on both sides. Absent a settlement, there is the potential for further protracted litigation and the additional expenditure of significant money, time, and resources. Moreover, Plaintiffs are not assured of recovery upon the completion of the litigation. A fair settlement, therefore, has significant merit as a resolution to this matter.

### *3. The Amount Offered in Settlement*

11

The proposed agreement offers a sum of $190,000 for distribution among the approximately fifty-five class members. (Dkt. # 100). Plaintiffs estimate that the average settlement share per class member will be approximately $3,400 before payment of legal fees and expenses. (Dkt. # 100). This amount is in addition to each class member's share of the substantial damages awarded in this Court's previous judgments against Defendants Ajax and Citicorp. (Dkt. #63 and # 74). Given the relatively small potential recovery per class member, the amount offered in settlement gives Plaintiffs the opportunity for a substantial economic benefit from the entire litigation.

### *4. The Experience and Views of Counsel*

As the Court noted in Part A above, class counsel has extensive experience in litigation, including that of class actions, and is capable of a competent and vigorous prosecution of this action on behalf of the Plaintiff class members. Their judgment with regard to the fairness of the proposed agreement should thus be given substantial weight. Likewise, it does not appear that counsel for the Lender Defendants has any reason to overreach in their efforts to obtain a settlement in this matter, and indicates by their lack of opposition to the instant motion that the proposed settlement is fair in their estimation. Finally, the Court has no cause to believe that the proposed settlement is anything but the result of arms-length negotiations between the parties.

Evaluating the proposed settlement to the limited depth permitted at this preliminary stage, the Court finds that the agreement reached by the parties is fair and adequate. Therefore, the proposed settlement may be submitted to the Plaintiff class members for

12

their consideration. At this stage of the litigation, the Court makes no determination regarding final approval of the proposed settlement.

### C. Approval of Notice Plan

Rule 23(c)(2)(B) requires that the Court direct adequate notice to all class members in a class action certified under Rule 23(b)(3). FED. R. CIV. P. 23(c)(2)(B). In the instant motion, Plaintiffs seek the Court's approval of their plan for notifying class members of the proposed settlement. (Dkt. # 100). Under that plan, Plaintiffs offer a four-tiered method for notification: (1) notice will be sent, within twenty-one days of this Court's approval of the notice plan, to individual class members by certified mail at their last known addresses; (2) any certified mail returned undelivered will be re-sent by regular mail; (3) a private investigator will be hired (and paid out of the settlement fund) to attempt to locate any class member not reached by methods (1) and (2); and (4) if any class member is not located by methods (1), (2), and (3), notice of the settlement will be placed in a newspaper advertisement in Warren and Youngstown, Ohio. (Dkt #. 100). The Court finds that this four-tiered notice plan fully satisfies the requirements of due process and constitutes "the best notice practicable under the circumstances." Rule 23(c)(2)(B). See also Johnson v. GMAC Mortgage Group, Inc., 2006 WL 2433474, *4 (N.D. Iowa 2006) (first class mail to class members' last known addresses satisfies notice requirement); Bourlas v. Davis Law Associates, 237 F.R.D. 345, 356 (E.D.N.Y. 2006) (first class mail to each class member is sufficient where all class members are identifiable through reasonable efforts).

Additionally, under Rule 23(c)(2)(B), notice to the class must contain the following

information: (1) a statement of the nature of the class action; (2) a definition of the certified class; (3) a statement of the class claims; (4) information regarding class members' individual right to enter an appearance through counsel of their choice; (5) information regarding class members' right to opt-out of the class and the procedure for doing so; and (6) information regarding the binding effect of class judgment on class members.  FED. R. CIV. P. 23(c)(2)(B).

The Notice of Proposed Class Settlement and Claim Form originally submitted for approval in the instant motion was deficient in its explanation of the opt-out procedure required in any class action certified under Rule 23(b)(3).  (Dkt. # 97 at 8-9).  The relevant portion of Plaintiffs' Notice of Proposed Class Settlement stated:

> Any employee may opt out of the class, but will then be unable to participate in the settlement.  Anyone who does not wish to be included in the class must object by submitting the Claim Form in a timely and appropriate manner.

(Dkt. # 97 at 9).  The proposed Claim Form then had two options to choose from: "Approve" or "Object."  It then stated: "ANY CLAIMANT WHO IS OBJECTING TO THE PROPOSED SETTLEMENT OR PAYMENT OF ATTORNEY FEES MAY PROVIDE A WRITTEN EXPLANATION BELOW:" and provided space for such a written explanation.

Objecting to the proposed settlement, however, is not the same as opting out of the class altogether.  The language of Rule 23(e)(4)(a) clearly allows an individual to choose to be included in the class and also to object to a proposed settlement.  The Rule states: "Any *class member* may object to a proposed settlement...that requires court approval

14

under Rule 23(e)(1)(A)." FED. R. CIV. P. 23(e)(4)(A) (emphasis added). Thus, the opt-out procedure cannot be identical to the procedure allowing a class member to object to the proposed settlement. Plaintiffs' original Notice of Proposed Class Settlement and Claim Form at least appeared to make the two procedures one and the same by offering only "Approve" or "Object" as response choices, without a selection for "Opt-Out," and by allowing for a "written explanation" of any objection.

At the Court's direction, Plaintiffs have submitted an amended Notice of Proposed Class Settlement and Claim Form ("Revised Notice and Claim Form") for approval. (Dkt. # 100). The Revised Claim Form contains an option entitled "I opt out of the settlement." The Court finds that the Revised Notice and Claim Form satisfies the requirements of Rule 23(c)(2)(B) and approves Plaintiffs' Notice Plan as amended.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs' Revised Unopposed Motion for Class Certification, Preliminary Approval of Settlement, and Approval of Notice Plan is hereby **GRANTED**. (Dkt. # 100).

The class certified pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure consists of approximately fifty-five former employees of Defendant Ajax Magnethermic Corp. at the Warren, Ohio, Ajax facility, who were terminated from employment on or around May 9, 2002. Further, the proposed settlement agreement is approved for the preliminary purpose of providing notice of the potential settlement to the class. Finally, Plaintiffs' proposed notice plan is approved as amended to include the

Revised Notice and Claim Form.

    **IT IS SO ORDERED.**

                                                   **/s/ Peter C. Economus - November 6, 2007**
                                                   **PETER C. ECONOMUS**
                                                   **UNITED STATES DISTRICT JUDGE**